**WOLSTEIN v. UNITED STATES.**

No. 10357.

Circuit Court of Appeals, Eighth Circuit.

Dec. 17, 1935.

.780

Neil Hughes, of Minneapolis, Minn., for appellant.

James J. Giblin, Asst. U. S. Atty., of St. Paul, Minn. (George F. Sullivan, U. S. Atty., and John L. Wheeler, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for the United States.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant, convicted on two counts of an indictment which charged him with violations of section 404, title 26 U.S.C., (now section 1287, title 26 U.S.C.A., formerly section 3296 R.S.,) appealed in conventional form. His punishment on each count was fixed at a fine and imprisonment, but the punishment on the second count ran concurrently with that on the first count.

Specifically, the charge in the first count was, that appellant and one Motzko "unlawfully, knowingly and feloniously did remove and aid and abet in the removal of distilled spirits on which the tax imposed by the laws of the United States had not been paid, to-wit, fifteen gallons, more or less, of moonshine whisky and six gallons, more or less, of alcohol, to a place other than the bonded warehouse, provided by law, to-wit, to a certain Plymouth Coupe" (the precise location as to street, house number, city and state, then followed).

The second count charged appellant, and said Motzko, with the concealment and aiding and abetting in the concealment of the identical nontax paid distilled spirits, in the Plymouth coupé, at the location aforesaid. Appellant was tried alone; his codefendant Motzko, having, as the vernacular expresses the notion, "turned state's evidence," testified for the government.

Numerous assignments of errors, forty-three in all, are set out in the brief. In consonance with the doubt whether any court could in a trial which took but two days commit so many errors, counsel for appellant urges but five in his brief. So, the other thirty-eight may under the rule laid down in the case of Schnitzer v. United States (C.C.A.) 77 F.(2d) 233, be considered as waived. But in fairness it may be observed that an examination of each of the thirty-eight discloses no serious error, at all inconsistent with a fair trial.

It is contended by appellant that it was error for the court to permit the witness Motzko to testify as to a conversation had with appellant some time in June or July, and prior to the commission on October 17, 1934; of the offenses charged in the indictment. This conversation was to the effect that appellant was again in the business of selling liquor, and if Motzko was also engaged in such business, he (Motzko) should come up and see him. It was urged in objection by appellant that the matter was too remote; that it had reference to another and independent offense, and that no foundation had been laid as to time. Clearly all of these objections were wholly afield from the point. No crime whatever was committed by appellant at the time. It is not yet a crime to make an unaccepted offer to sell illicit spirits. The matter was merely an admission against interest voluntarily and freely made by appellant. It tended to show that appellant was engaged in the business of selling liquor, that any liquor he might have on hand, whether in containers of five gallons' capacity, or otherwise, was intended for sale, and not for appellant's own use. Cf. Act of January 11, 1934, 48 Stat. 313; section 1152, title 26, U.S.C.A. As well contend that a threat made by A, eight weeks before a murder that he was going to kill B, whom he afterwards is charged with killing, is evidence of another crime and is too remote. Remoteness, absent extrinsic facts, such as locus poenitentiæ, affects weight only, and not admissibility. The contention is frivolous.

Again it is contended that error was committed in permitting an eyewitness for the government who was at high noon some 400 feet away, to say that an object "appeared to be a five-gallon jug" and it "appeared (to the witness) that appellant picked it up from between two cars and placed it in the Plymouth Coupe." Obvi-

ously, the word "appeared" was used by the witness as a mere form of expressing the notion that according to his belief, bottomed on observation, appellant did have a five-gallon jug which he picked up and put in the automobile. His language evinced some doubt, it is true, of the correctness of his observation; but this was for the jury. The mere fact that the witness was fair enough to state the fact in language which carried a tincture of doubt as to absolute verity did not render his statements inadmissible. The doubt expressed by the very language used affected the weight of the evidence. It was as if the witness had said, "I was four hundred feet away, I saw an object which I took to be a jug, and I saw a man whom I took to be the appellant put this object in an automobile, but I may have been mistaken, I am only expressing the result of my best observation, and my belief bottomed on my experience and this observation, from having on other occasions seen the appellant and this jug and other jugs." A similar situation in entire effect arises on doubtful identification. A witness says he believes the accused to be the person whom he saw in the commission of a crime; he looks like the man, i. e., he appears to be the same person; he believes him to be such; but he cannot be sure to an absolute certainty. Such evidence may be weak, but surely it is not inadmissible; its weight and weakness are for the triers of fact, we think.

But the most serious and most strongly stressed contention made is, as to a matter of alleged erroneous admission of evidence, in that the witness Motzko was permitted to detail the facts and circumstances of a prior purchase of "moonshine whiskey," which occurred some two or three weeks prior to the commission of the acts on which the case at bar is bottomed. These facts were that Motzko went, about the last of September or first of October, 1934, to the appellant at his house and asked to buy six one-gallon cans of alcohol; that the price was agreed on between the witness and appellant; that he paid the appellant therefor; that the manner of the delivery was, the appellant went to the telephone and called up some one with whom he talked; that shortly thereafter a person designated by the witness as "a guy" brought over, to the premises of appellant, the six one-gallon cans of alcohol, and appellant delivered them to the witness.

On these facts appellant now contends that the above acts of appellant were not admissible, because they constituted proof of another independent and unrelated crime, not directed toward proving any fact relevant to the charges on trial, and not involving intent.

Appellee contends that inasmuch as the moonshine whisky, which constitutes a part of the distilled spirits here involved, was brought, or caused to be brought to appellant's premises by identically the same procedure, the evidence was admissible as proof of appellant's method of carrying on his illicit business, and of the fact that he was possessing nontax paid spirits for sale and not for his own consumption.

It is not entirely certain that this evidence did not have some probative value in throwing light on the pending charge against appellant; nor is it certain that intent, as an aider and abettor, is not involved in the case. Cf. United States v. Nunnemacher, Fed.Cas.No.15,902. Certain it is that if appellant had merely taken or caused to be taken articles wrapped in burlap from one car and placed them in another, without any knowledge as to what such articles were and without knowledge that such burlaps contained nontax paid "moonshine whiskey," he could not be guilty of any offense. But he is charged with doing this very thing willfully, and willfully means intentionally and connotes knowledge also.

But we need not pursue the discussion further. The only objections made by appellant to this alleged proof of another and unrelated crime were that it called "for a conclusion of the witness," and again that it was "leading," counsel adding, "I have not any objection to him giving the conversation" (as to the purchase of this alcohol) "except my general objections." What this general objection was nowhere appears; it is not at all ever referred to in the record, or in the context leading up to the admission of the alleged erroneous evidence.

In the course of the charge to the jury, the trial judge read to the jury a part of the Act of January 11, 1934 (48 Stat. 316, 26 U.S.C.A. § 1152a) as follows: "No person shall * * * transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein

and evidencing payment of all internal-revenue taxes imposed on such spirits."

Appellant contends that this statute involves a separate and distinct offense from that for which he was on trial and may well have misled the jury into a belief that the mere possession of liquor on which no tax has been paid is a crime, and so the reading of this statute was hurtful error.

■ Prior to the passage of the act from which the trial judge read, no presumption arose from the absence of internal revenue stamps on containers of less than five gallons of distilled spirits, that the tax had not been paid thereon. It did arise as to absence of stamps on five-gallon containers. Dukes v. United States (C.C.A.) 275 F. 142; Mickle v. United States (C.C.A.) 33 F.(2d) 684; Hester v. United States (C.C.A.) 284 F. 487, 488. In the Hester Case, supra, there is said upon the point this: "In this case the spirits covered by the indictment consisted of less than five gallons, namely, a quart, and the defendant is entitled to the benefit of the presumption that the tax had been paid. The burden was upon the government to show to the contrary. If the quantity had been greater than five gallons, the absence of stamps showing payment of the tax would place upon the accused the burden of showing that the tax had been paid. It was incumbent upon the government, in the circumstances of this case, where the tax on the spirits was presumed to have been paid, to establish the contrary by proof to the satisfaction of the jury beyond a reasonable doubt, which we think it utterly failed to do, and hence that the defendant's motion to instruct a verdict in his behalf, should have been sustained."

■ This is also the holding upon the point in this court. Mickle v. United States (C. C.A.) 33 F.(2d) 684. In this situation and prior to the passage of the act, a part of which the trial judge quoted, it was well-nigh impossible to prove affirmatively the fact that internal revenue taxes had not been paid on quantities of distilled spirits found in containers of less than five gallons. The act quoted wrought a radical change in this situation. Since the old law had uniformly been construed as creating prima facie evidence of the nonpayment of the tax from the unexplained absence of stamps (Hester v. United States, supra, Mickle v. United States, supra), the trial court, correctly, we think, held the like as to the effect of the new act (act of January 11, 1934, supra).

■ There are, as will be noted, a number of exceptions in the above statute. The only exception at all pertinent, or possibly applicable either under the situation, or the evidence in this case, namely, that no stamps are required when the spirits are held for consumption, and not for sale by the possessor, was most carefully called to the attention of the jury in the charge. The court made it clear that his only object in reading the statute complained of was to advise the jury of the change in the law whereby containers of less than five gallons were now required to bear stamps, the absence whereof created prima facie evidence of the nonpayment of the tax. True, he could have done this by merely stating the substance of the new act in his own language. This might well have been the wiser course. But he saw fit to do a necessary thing, that is to advise the jury that the one-gallon containers in evidence must now bear stamps, in another way, that is, by reading part of the statute to them. So, if it was error, it was an error of form and not of substance, and it is not credible that an intelligent jury, with the lucid and painstaking explanation of the reason for the quotation of the act, could have been at all misled or confused.

In divers ways appellant challenges the sufficiency of the evidence to warrant conviction. He did this generally by requests for a directed verdict at the close of all of the evidence in the case, and specifically by requests for special charges, which the court denied. All of the latter were bottomed on an erroneous assumption of fact that no five-gallon containers were involved, and an error of law that containers of one gallon were not required to bear stamps affixed thereon. And so it was not error to refuse to give the proffered charges.

■ We think there can be no doubt that if the witnesses were believed by the jury and the result strongly indicates that they were, the evidence warranted appellant's conviction. True, many of the controlling facts came from Motzko, an accomplice, without whose testimony no case was made; but this fact furnishes no legal reason for setting aside the judgment. The law as to the testimony of an accomplice is too well settled to make a restatement of it necessary, and the trial judge correct-

ly and fully covered it in his charge. In fact, he could have charged on the point more unfavorably to appellant than he did and yet kept within the law.

But the burden of appellant's complaint as to the lack of evidence to sustain the charges, seems to be that "the government failed to prove that the distilled spirits were removed from a distillery or a distillery warehouse." He cites and greatly relies on the case of Mickle v. United States (C.C.A.) 33 F.(2d) 684. We think he misconstrues the Mickle Case; that it does not hold that the statute can be violated only by a removal of spirits from a registered distillery, or from a distillery warehouse. In the case of Day v. United States, 31 F.(2d) 71, 74, which was a case similar to this at bar, this court said: "Any removal of the distilled spirits, whether it be the first removal from the distillery, or a subsequent one, may operate to defraud the United States of its revenue." We take judicial notice, of course, that all distilled spirits are made in a distillery of one sort or another; that they do not "just grow," as Topsy did. It is not necessary, of course that the distillery of origin shall be a legal, bonded, or registered place of manufacture in order that the United States shall have the power to lay a tax on the distilled spirits. Such a narrow and restricted view would well nigh destroy the statute on which this prosecution rests. Again, apposite to this point, it was said by this court in Day v. United States, supra, this: "We conclude that the purpose of section 3296 of the Revised Statutes [26 U.S.C.A. § 404] as applied to the facts in this case, is to penalize any willful concealment of such spirits so removed whether or not the person making such removal or concealment knew of the original removal from the distillery, and that there was no error in refusing the instruction asked."

As indicated already the Mickle Case, supra, also decided by this court (and in which one of the judges sat who had concurred in the Day Case, supra) when carefully read and correctly construed, is not at all in conflict with the Day Case, supra.

As already forecast, many other assignments of alleged error are found in the brief of appellant. We have considered such as are not waived, and even some of those ex gratia, and find no error in them

of sufficient moment to warrant reversal, and so we conclude that the case should be affirmed, and so we order.